UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SILVESTRE PEREZ-PAREDES (A-Number: 094-811-315),

Petitioner,

v.

WARDEN, *et al.*,

Respondents.

Case No.  1:26-cv-3356-DC-JDP

ORDER; FINDINGS AND RECOMMENDATIONS

Petitioner Silvestre Perez-Paredes entered the United States at an unknown time and was detained by ICE in 2025.  Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241.  For the following reasons, I recommend that the petition be granted and that petitioner be afforded a bond hearing.

**Background**

Petitioner entered the United States at unknown time.[1]  ECF No. 7-1 at 1.  There is no allegation or evidence that, since his most recent entry into the country and prior to his current detention, petitioner had been detained by immigration officers.  In 2016, petitioner was denied a U nonimmigrant visa. *Id*. at 4.  Petitioner has suffered the following convictions: a DUI in 2001; a DUI in 2018; and attempting to prevent a victim from testifying in 2025.  ECF No. 7-2 at 7, 10,

---

[1] Petitioner has previously been removed to Mexico on four occasions, most recently in 2010.  ECF No. 7-1 at 4.

1

12. Additionally, petitioner's criminal history includes the following arrests: disorderly conduct relating to prostitution in 2005; possession of a controlled substance in 2006; possession of marijuana for sale in 2009; willful cruelty to a child in 2017; battery against a spouse/ex-spouse in 2024; and rape by means of force or fear in 2024. *Id*. at 8-9, 11-13.

In October 2025, petitioner was arrested and charged in California with unlawful possession of tear gas, unlawful possession of paraphernalia, and appropriation of lost property. ECF No. 7-1 at 2. The record does not establish the disposition of these charges. Upon his release from local custody, petitioner was detained by ICE. *Id*. at 3. Since his detention, petitioner has been denied a bond hearing. *See* ECF No. 1 ¶ 23; ECF No. 7 at 2.

**Procedural History**

On May 1, 2026, petitioner, proceeding pro se, filed a petition for writ of habeas corpus.[2] ECF No. 1. On May 14, 2026, respondents filed an answer. ECF No. 7. Petitioner was permitted to file a traverse by May 21, 2026. *See* ECF No. 6 at 2. Because petitioner did not file a traverse by that deadline, the matter is deemed submitted. *See id*.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

---

[2] Petitioner concurrently filed a motion for the appointment of counsel. ECF No. 2. In light of my recommendation of that the case be closed, I will deny this motion.

**Analysis**

Respondents argue that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), as opposed to discretionary detention under 8 U.S.C. § 1226(a).[3] ECF No. 7 at 2. Under section 1225(b)(2)(A), applicants "seeking admission" to the United States are subject to mandatory detention: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . ." 8 U.S.C. § 1225(b)(2)(A). Critically, no bond hearing is provided for a noncitizen detained under this section. *Id.* By contrast, "[u]nder § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an [immigration judge] at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

For decades, the government applied section 1226(a)—and not section 1225(b)(2)(A)—to noncitizens apprehended in the interior of the United States. *See id.* at 1196 ("The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal."). In July 2025, however, the Department of Homeland Security ("DHS") revisited its legal position and now maintains that all applicants for admission within the meaning of section 1225(a) are subject to mandatory detention under section 1225(b). ECF No. 7 at 2 n.2. Respondents urge the court to follow suit and find that petitioner is subject to mandatory detention under 1225(b)(2). *Id.* at 2.

This issue is one of statutory interpretation, and so I begin with the plain text of the Immigration and Nationality Act. *See United States v. Lillard*, 935 F.3d 827, 833-34 (9th Cir. 2019). Section 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not

---

[3] As an initial matter, respondents request that the court hold this action "in abeyance pending the Ninth Circuit's resolution of" *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025). ECF No. 7 at 3. While the Court of Appeals' decision may be instructive, a somewhat unsettled legal landscape does not justify an indefinite stay. Moreover, because respondents have filed an answer to the petition, it does not appear that they would suffer any prejudice from the court presently ruling on the petition. Accordingly, respondents' request is denied.

clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A). There is only one exception to mandatory detention: a noncitizen may be paroled into the United States "for urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

While the text of section 1225(b)(2)(A) limits its reach to applicants "seeking admission," section 1226(a) does not include the same qualifying language. Section 1226(a) provides that, for a noncitizen who is arrested and detained "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole."[4] 8 U.S.C. §§ 1226(a)(1)-(2).

The government urges the court to read section 1225(b)(2)(A) as using the terms "applicant for admission" and "seeking admission" interchangeably. ECF No. 7 at 2. According to the government, all noncitizens who have not been admitted to the United States—i.e., "applicants for admission"—are necessarily "seeking admission" for purposes of section 1225(b)(2)(A). *Id*. Thus, the government contends, section 1225(b)(2)(A) applies to noncitizens who are "applicants for admission." *Id*.

I find that the government's interpretation violates the rule against surplusage in three ways. First, for section 1225(b)(2)(A)'s mandatory detention to apply, "a noncitizen must (1) be an applicant for admission, (2) be 'seeking admission', and (3) be 'not clearly and beyond a doubt entitled to be admitted.'" *J.S.H.M. v. Wofford*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 2938808, *11 (E.D. Cal. Oct. 16, 2025). If, as the government argues, all "applicants for admissions" were also individuals "seeking admission," the phrase "seeking admission" would be unnecessary. The government's reading, therefore, runs contrary to the rule against surplusage. *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[N]o clause,

---

[4] Section 1226(c) mandates detention of noncitizens falling into "one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289. Because respondents do not argue that this section governs petitioner's detention, I do not consider the applicability of this section.

sentence, or word shall be superfluous, void, or insignificant.").

Second, the government's reading cannot be squared with the text of section 1226. Were it possible to interpret section 1225(b)(2)(A) in the manner favored by the government, section 1226(a)'s requirement that noncitizens be afforded bond hearings—arguably the section's centerpiece—would serve no purpose because the government would be allowed to detain all "applicants for admission" under section 1225(b)(2)(A). Further, as noted, under section 1226(c), Congress mandated the detention of certain categories of noncitizens. 8 U.S.C. § 1226(c). If, as the government now contends, section 1225(b)(2)(A) can be applied to all noncitizens who are inadmissible, section 1226(c) would also be superfluous.

Third, the Laken Riley Act ("LRA")—passed in January 2025—would also be rendered superfluous. The LRA amended section 1226(c) to add new categories of mandatory detention. *See Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025). Under the government's theory of section 1225(b)(2)(A), the LRA would be unnecessary; if mandatory detention for all unauthorized noncitizens were already permitted—and, in fact, required—by section 1225(b)(2)(A), the amendment would be surplusage. "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995).

Respondents' theory, essentially, is that both sections 1226(a) and 1226(c) have been taken out of commission, not by any new law or act of Congress, but by a shift in executive branch policy. This interpretation collides squarely with the rule against surplusage. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

I also find that the government's interpretation runs contrary to the DHS's longstanding practice prior to July 2025. As noted, the government previously interpreted these provisions in the manner argued by petitioner. Prior agency practice, though not dispositive, may inform this court's determination of law. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is."). Other courts have emphasized the persuasive value of

5

the DHS's "longstanding agency practice."  *See Rodriguez*, 779 F. Supp. 3d at 1259 ("Congress enacted the LRA against the backdrop of longstanding agency practice applying Section 1226(a) to inadmissible noncitizens already residing in the country.").

Finally, I note that arguments substantially similar to those made by the government here have been rejected by a large majority of district courts nationwide.  *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases).  The government's argument also runs contrary to *Jennings*, which held that section 1225(b) "applies primarily to aliens seeking entry into the United States," whereas sections 1226(a) and (c) "authorize[] the Government to detain certain aliens already in the country pending the outcome of removal proceedings . . . ."  583 U.S. at 289, 297.  While the government's interpretation was endorsed by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the persuasive power of an agency ruling is limited.  *See Loper Bright*, 603 U.S. at 400.

Accordingly, because petitioner was detained in the interior of the United States, I find that his detention is governed by section 1226(a) and not, as respondents argue, by section 1225(b).  Given this finding, I must determine whether the appropriate relief is release or a bond hearing.  Petitioner requests release or, alternatively, a bond hearing.  ECF No. 1 at 17.  Respondents do not address this issue.  *See* ECF No. 7.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008).  The Court has also observed, however, that "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted."  *Boumediene v. Bush*, 553 U.S. 723, 779 (2008).  "Indeed, common-law habeas corpus was, above all, an adaptable remedy.  Its precise application and scope changed depending upon the circumstances."  *Id*.; *see also Carafas v. LaVallee*, 391 U.S. 234, 239 (1968) (The federal habeas statute "does not limit the relief that may be granted to discharge of the applicant from physical custody").

In analogous circumstances, courts in this Circuit have ordered both forms of relief.  Some courts have found that a bond hearing is the proper remedy.  *See Rodriguez*, 779 F. Supp. 3d at

6

1263 ("The Court finds that the specific harm Rodriguez alleges—that he is unlawfully barred from receiving a bond hearing on the merits—is remedied by granting his request for a bond hearing under Section 1226(a) and enjoining Defendants from denying bond on the basis that he is detained under Section 1225(b)(2)."). Other courts have held that release is the proper remedy. *See Feng v. Lyons*, No. 1:26-cv-0235-DJC-SCR, 2026 WL 472635, at *1 (E.D. Cal. Feb. 19, 2026) ("Provision of a bond hearing after months of detention without the opportunity to seek release on bond cannot be said to satisfy due process where that bond hearing is a matter of statutory right.").

Under the circumstances presented, I find that a bond hearing is proper. The harm suffered by petitioner—not receiving the bond hearing to which he is statutorily entitled—is remedied by providing that hearing. *See Rodriguez*, 779 F. Supp. 3d at 1263. Moreover, *Feng* is distinguishable from the instant action. There, the court found "no indication . . . of prima facie evidence that Petitioner could be found to be a risk of flight or a danger to the community." *Feng*, 2026 WL 472635, at *1. The same cannot be said here. As noted, petitioner has been convicted for attempting to prevent a victim from testifying and for two DUIs. ECF No. 7-2 at 7, 10, 12. He also has been arrested for disorderly conduct regarding prostitution, possession of a controlled substance, possession of marijuana for sale, willful cruelty to a child, battery against a spouse/ ex-spouse, rape by means of force or fear, unlawful possession of tear gas, unlawful possession of paraphernalia, and appropriation of lost property. *Id*. at 8-9, 11-13.

While this evidence might prove insufficient for the immigration judge to deny bond, it is sufficient to support the finding that "due process is satisfied if [p]etitioner is provided with a post-deprivation bond hearing." *See Archundia v. Wofford*, No. 1:26-cv-1452-DJC-CSK, 2026 WL 607977, at *2 (E.D. Cal. Mar. 4, 2026) (finding a bond hearing to be the proper remedy where petitioner was previously arrested for "allegedly engaging in prostitution") (citing *J.S.H.M.*, 2025 WL 2938808, at *15-16).

7

**Conclusion**

Accordingly, it is hereby ORDERED that petitioner's motion for the appointment of counsel, ECF No. 2, is DENIED.

Further, it is hereby RECOMMENDED that:

1.  The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2.  Within seven days of this order, petitioner (A-Number: 094-811-315) be afforded a bond hearing before a neutral arbiter pursuant to 8 U.S.C. § 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.

3.  Respondents be ordered to file a status report, within five days of the bond hearing, confirming that the hearing occurred.

4.  The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    May 25, 2026    

              JEREMY D. PETERSON
              UNITED STATES MAGISTRATE JUDGE